*In re* FOX'S ESTATE.

1. WILLS—UNDUE INFLUENCE—EVIDENCE.

In proceedings to contest a will on the ground of undue influence, evidence *held*, to clearly show that such will was the free act and deed of testatrix.

2. SAME—MENTAL COMPETENCY—BURDEN OF PROOF.

Where, in proceedings to contest a will, mental incompetency is alleged, the burden of proof to establish same rests upon contestants.

3. SAME — VERDICT — WEIGHT OF EVIDENCE—JUDGMENT NON OBSTANTE VEREDICTO.

Where, upon review, the evidence shows that testatrix was able to remember the extent of her property, to consider who had claims upon it, and knew what disposition she was making of it, and that the family doctor and parish priest, who frequently called on her, were not questioned as to her mental capacity, a judgment *non obstante veredicto* is entered in proponent's favor; it being apparent that the verdict for contestants was rendered, not upon a fair consideration of the testimony, but upon a determination that the will was unjust and that testatrix did not fairly distribute her property.

Error to Wayne; Marschner (Adolph F.), J.     Submitted June 15, 1927.     (Docket No. 86.)     Decided October 3, 1927.

Mary Boyson, executrix, presented for probate the last will of Sophia Fox, deceased.     On petition of Sophia Ritter and others the will was certified to the circuit court.     Judgment for contestants.     Proponent brings error.     Reversed, and judgment ordered entered for proponent *non obstante veredicto*.

[1]Wills, 40 Cyc. p. 1165; [2]Id., 40 Cyc. p. 1020; 17 L. R. A. 494; 36 L. R. A. 724, 733; 28 R. C. L. 98; [3]Id., 40 Cyc. pp. 1004, 1023.
240—Mich.—30.

*Charles C. Conklin,* for appellant.

*Louis Ott,* for appellees.

SHARPE, C. J.    Three of the children of deceased contest her will on the grounds of undue influence and mental incompetency.    In it she devised and bequeathed substantially all of her property, worth about $5,000, to a fourth child.    The jury found against the will, and the proponent reviews by writ of error.

1. Undue Influence.    The claim made as to undue influence is so fully disposed of by what was said in the recent case of *In re Luder's Estate,* 238 Mich. 87, that it need not be further considered.    The will was drawn by an attorney whose reputation is not questioned, and witnessed by himself and another, whose testimony clearly shows that it was her free act and deed.

2. Mental Incompetency.    The will was made on August 11, 1925, and deceased passed away on August 26th, 15 days later.    She was past 70 years of age. She had been ill during the month of July at her own home, but was not well cared for there.    On August 1st she was taken by proponent and another daughter, one of the contestants, to the home of proponent, where she lived until her death.    During the entire time she was attended by Dr. Byron L. Howard.    He was called as a witness by contestants, and testified to his attendance upon and treatment of deceased.    No question was asked him about her mental competency, although it appeared that he had visited her on the day the will was executed.    The burden of proving that she was not mentally competent to make a will was on the contestants, and their failure to question the doctor concerning her mental condition is a circumstance which cannot be lost sight of in determining whether the testimony submitted by them justified

the submission of this issue to the jury. It also appears that she was visited by her parish priest, and yet he was not called as a witness. They called a number of witnesses, who testified that deceased talked to them about her desire to make a will and her intentions relative thereto. Several witnesses also testified that deceased did not recognize them at first when they called upon her at proponent's home. Some of them testified that some little time after medicine had been administered to her she would become quiet and go to sleep. No inquiry was made of the doctor as to the nature or effect of the medicine he had left for her. The attorney who drew the will and the man who accompanied him and acted as a witness were strangers to the deceased. They were alone with her in her room and in the adjoining room where the will was prepared for about two hours. During all this time proponent was not present, nor in hearing distance. She had, as she testified, been requested by her mother to get her an attorney to prepare her will. She asked a friend to recommend one, and he suggested Mr. Moran. She telephoned him, and he came. He and the witness testified that deceased, while very weak, was apparently of sound mind. She named her several children to them, and expressed the desire that her property should go to the proponent.

Applying the test spoken of in *Schneider* v. *Vosburgh,* 143 Mich. 476, 478, she was able to remember what property she had, to consider who had claims upon it, and to know what disposition she was making of it. Counsel for contestants says:

"The jury did not believe the testimony of proponent's witnesses to the will—that was their privilege. The jurors saw all witnesses and were able to judge of their credibility."

It is our experience in the consideration of such cases that the verdict of the jury, instead of being founded upon a fair consideration of the testimony, is more likely to be based upon their determination that the will is not a just one, that in it the testatrix did not fairly distribute her property.    The following late cases are illuminating on the duty of the trial court in such cases:    *In re Weber's Estate,* 201 Mich. 477; *In re Walter's Estate,* 215 Mich. 572; *In re Ver Vaecke's Estate,* 223 Mich. 419; *In re Cottrell's Estate,* 235 Mich. 627.

The verdict and judgment are reversed and set aside and the case remanded, with directions to enter a judgment *non obstante veredicto* agreeably to the motion made therefor.    The appellant will recover costs.

BIRD, SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.